THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. LEONIDES VEGA CEDEÑO, Defendant and Appellant.

No. 13996.   Argued November 8, 1949.—Decided January 26, 1950.

---

*Santos P. Amadeo* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Leonides Vega Cedeño was charged with the offenses of murder in the second degree and assault to commit murder. Both cases were tried jointly by jury who found him guilty of voluntary manslaughter in the first case and acquitted him in the second. The lower court sentenced him to serve an indeterminate sentence of from one to ten years' imprisonment in the penitentiary.

Feeling aggrieved the defendant appealed and alleged that the lower court erred: (1) because certain statements of the prosecuting attorney in addressing the jury in the sense that he would resign his post if the jury acquitted the defendant deprived him of his right to an impartial trial, (2) because the verdict of the jury acquitting the defendant in the case of assault to commit murder is inconsistent with the verdict of guilty in the present case, and (3) because the verdict sentencing him of voluntary manslaughter is a bargain verdict produced by the statements of the prosecuting attorney to the jury.

■ The facts connected with the first assignment were set forth in our opinion in case No. 13,376, *People* v. *Vega,* 69 P.R.R. 376, where we reversed the order of the lower court and granted a new trial. The remarks attributed to the prosecuting attorney were made while he informed the jury in his first address after the conclusion of the evidence. The transcript of the evidence does not show that the court reporter who participated in the trial took stenographic notes of the remarks. Only the following appears:

"During the first address of the prosecuting attorney, he states that he resigns his position, among other comments, and Atty. Ramos Antonini objects to the remarks of the prosecuting attorney and argues his objection.

"The court orders the stenographer to take down what is hereinafter said.

"Judge: Well, the prosecuting attorney can not promise anything to the jury. (He instructs the jury not to take into consideration the remarks made by the district attorney.)

"Atty. Ramos Antonini: Indeed, to bargain the resignation of his post as prosecuting attorney for a verdict is to flagrantly violate the rights of a citizen, who is accused by a prosecuting attorney, based on the facts and not on what a district attorney might decide to do. That would be the most outrageous violation of attack that he could commit. It is the excess of youth!

"Judge: He has not shown his intention to make a bargain.

"Atty. Ramos Antonini: I must rise to protect the right of the surety (I mean the defendant) and invite him, ask him not to ever commit such a serious error again.

"Dist. Atty.: For the purpose of the record. We do not think that any violation of principle or legal practice has been committed, but I do attack him (the defendant) because the case is before the gentlemen of the jury and we insist that we have the right to argue our case as indicated by the Supreme Court. If it is a question of some case, bring forth the authorities and the commentators.

"Judge: We shall continue without offering any position and expecting no more comments on the incident."

The record, therefore, does not reflect exactly and fully the district attorney's behavior before the jury. Neither have we the exact transcript of the instructions of the judge to the jury in connection with the remarks of the district attorney, since the stenographer, erroneously, merely stated that the judge "instructs the gentlemen of the jury not to take into consideration the remarks of the district attorney." And we say erroneously because the court had ordered him to take down everything that was said, and furthermore, even if the court had not ordered him, it was his duty to take down any instruction given by the court to the jury. As we said in *People* v. *Colón*, 63 P.R.R. 371, 375: "A stenographer has no right to exercise his judgment as to which instructions shall be taken stenographically. . . . Court reporters who

fail to do their duty in this and in other respects should be dealt with severely."

Which were the remarks of the district attorney to the jury? Let us see. According to the incident in connection with the motion for a new trial sought by the defendant and to which there were attached two affidavits couched in identical terms by the two attorneys for the defendant, Attys. Herminio Miranda and Ernesto Ramos Antonini, and which were included in the record of Case No. 13,376, *People* v. *Vega, supra,* the following took place:

"After the conclusion of the evidence and while addressing the jury Hon. Pablo Santiago Lavandero, District Attorney of Bayamón, visibly impressed and weeping copiously, said to the jury among other things: 'Gentlemen of the Jury, I hold this position because I need it, but if you acquit this defendant, I shall resign immediately.' "

The district attorney in answering the motion for a new trial denied that the remarks attributed to him by counsel for the defendant had been uttered by him, and on the contrary, maintained that what he had said was the following:

"That in the first address of the district attorney he did speak and comment at length on the evidence, as well as its merits to support both accusations; and that in Puerto Rico some jury panels were not doing justice as society demanded; that if the jury in Puerto Rico, and specifically those of the Judicial District of Bayamón continued to impart justice as they had been doing recently, that although he, the district attorney, upon his return from the Army where he had served for about three years, was in need temporarily of holding a public office, the honorable office of district attorney, he would be inclined to resign said office; that in Puerto Rico there were many criminals who escaped the clutches of justice, especially those who had the financial means to engage for their defense the ablest members of the Puerto Rican Bar."

He further denied that he had wept copiously or in any other way, while addressing the jury, although he admitted that he was deeply moved.

To support his version of the incident the district attorney attached affidavits of Juan Ramón Rivera and Humberto Alvarez, assistant marshal and assistant clerk of the lower court respectively and of Evangelista Félix, Angel Martínez, Andrés Arroyo and Octavio Maldonado, members of the jury who intervened in the case, all to the effect that the words uttered by the district attorney, were, more or less, as stated in his motion, that at no time did the district attorney weep and that the judge instructed them *specifically* that in deciding the cases they should not take into consideration the statements of the district attorney with regard to his possible resignation.

Under the attendant circumstances in this case we are not in a position to decide whether the remarks attributed to the district attorney are prejudicial error or whether the instructions given by the court to the jury with regard to those remarks were sufficient to cure the error, even assuming, without deciding, that it was committed. *People* v. *Zayas*, 65 P.R.R. 504; *People* v. *Piazza*, 60 P.R.R. 561; *People* v. *González*, 59 P.R.R. 95.[1]

If the lower court had stated in the record the exact words uttered by the district attorney, and the stenographer had complied with his duty of taking down and copying textually the instruction of the court to the jury, the situation would be different. However, we can not take as a basis a series of sworn declarations, contradictory among themselves, as to what the district attorney said, in order to decide whether the error was committed, and much less, whether it was sufficiently cured by the instruction, or if committed, that it was not cured by the latter.

In *People* v. *Colón, supra*, in censuring the conduct of the stenographer, we said: "This case presents graphically the dire consequences flowing from such a dereliction of duty.

---

[1] The case of *People* v. *Marchand,* 53 P.R.R. 640, cited by appellant, is, on its facts, quite different from the instant case, and therefore, inapplicable.

No right is more fundamental under our institutions than the presumption of innocence in a criminal case. Yet this court does not have before it a proper transcript of the instruction of the district court on that question because the court reporter failed to take stenographic notes of that instruction."

Likewise, in the instant case, we say that no right is more fundamental under our institutions than the right to an impartial trial by the jury to render a verdict according to the evidence and in harmony with the instructions of the court. However, we do not have the proper transcript of the instruction of the court attempting to wipe from the minds of the jury the impression, if any, that may have been caused by the comments of the district attorney by interpolating in his address his official position which had nothing to do with the evidence of the case, inasmuch as the court reporter did not take stenographic notes of said instruction. By failing to do so, a fundamental right of the defendant was violated—*People* v. *Colón, supra*—and the judgment will be reversed and a new trial granted.